## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| **FIFTH THIRD BANK, NATIONAL ASSOCIATION** | : | |
| **38 Fountain Square Plaza** | : | |
| **Cincinnati, Ohio 45263,** | : | |
| | : | **CASE NO.** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **TRANQUILLITY CHEVROLET, INC.,** | : | |
| **c/o BRENT I. SMITH, Registered Agent** | : | |
| **5790 Anthony Street** | : | |
| **Tranquillity, California 93668,** | : | |
| | : | |
| **Please also serve:** | : | |
| | : | |
| **TRANQUILLITY CHEVROLET, INC.** | : | |
| **P.O. Box 279** | : | |
| **Tranquillity, California 93668** | : | |
| | : | |
| **And** | : | |
| | : | |
| **BRENT IAN SMITH,** | : | |
| **1741 W. San Bruno Avenue** | : | |
| **Fresno, California 93711** | : | |
| | : | |
| **And** | : | |
| | : | |
| **JOHN DOES 1-10** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff Fifth Third Bank, National Association ("Fifth Third), by and through counsel, and for its Complaint ("Complaint") against Defendant Tranquillity Chevrolet, Inc. ("TRANQUILLITY"), Brent Ian Smith ("SMITH"), and John Does 1-10 ("JOHN DOES") (collectively, "Defendants") hereby states as follows:

## PARTIES

1.      Fifth Third is a national banking association with its principal place of business located at 38 Fountain Square Plaza, Cincinnati, Ohio.

2.      Upon information and belief, TRANQUILLITY is a California corporation that operates a car dealership located at 5790 Anthony Street, Tranquillity, California.

3.      Upon information and belief, SMITH is or was the owner, operator and manager of TRANQUILLITY, and resides at 1741 W San Bruno Avenue, Fresno, California.

4.      Fifth Third does not know the true names and capacities, whether corporate, associate, individual, or otherwise, of Defendants names herein as JOHN DOES 1-10. Upon information and belief, JOHN DOES 1-10 are in some manner responsible for the acts, occurrences, and transactions set forth herein.

5.      All acts of TRANQUILLITY's employees as hereinafter alleged were authorized or ratified by the owner or managing agents of TRANQUILLITY and SMITH.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this case. Federal diversity jurisdiction exists under 28 U.S.C. §1332 because Fifth Third and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district as a substantial part of the events or omissions giving rise to the claims occurred in this district, and because TRANQUILLITY and SMITH are subject to personal jurisdiction in this judicial district and have minimum contacts with the State of Ohio. The Dealer Agreement and Retail Installment and Contract and Security Agreement (defined below) likewise permit Fifth Third's selection of this forum.

## FACTUAL BACKGROUND

6.      On October 19, 2020, Fifth Third and TRANQUILLITY, by and through its principal and owner, SMITH, entered into a Fifth Third Dealer Agreement ("Dealer Agreement"). A copy of the TRANQUILLITY Dealer Agreement is attached hereto as Exhibit A.

7.      Upon information and belief, SMITH signed the Dealer Agreement.

8.      The purpose of the Dealer Agreement was to set forth the terms of a financing plan in which TRANQUILLITY could offer Fifth Third's financing services to its customers in connection with the sale of new and pre-owned cars and trucks at TRANQUILLITY'S dealership.

## The Terms Of The Dealer Agreement

9.      As part of its Dealer Agreement, TRANQUILLITY made the following representations and warranties (among others) in order to induce Fifth Third to finance the purchase of used and pre-owned cars and trucks:

"1.      Each Loan application, retail installment sale contract, note and security agreement and all other documents ('Documentation') presented to Fifth Third by [TRANQUILLITY] shall be the valid and binding obligation of the customer who shall have executed the same in the presence of [TRANQUILITY] and shall be enforceable against said customer in accordance with its terms.

2.      To the best of [TRANQUILLITY'S] knowledge, information and belief, all information contained in the Documentation submitted to Fifth Third will be correct and complete. [TRANQUILITY] has no knowledge of any facts that would impair the value or validity of these transactions or the Documentation, and [TRANQUILLITY] is authorized by its customer to submit all Documentation to Fifth Third.

3.      All information furnished by Dealer concerning the cost of the Collateral will be correct and complete.

*       *       *

5.      Each item of Collateral will be free of all security interests, liens, charges, levies and other encumbrances, other than Fifth Third's security interest.

*       *       *

8.      All signatures appearing in the Documentation will be authorized and genuine, and the Documentation will constitute the legal, valid and binding contractual obligations of those purporting to be bound and will be enforceable against the signers thereof in accordance with the terms contained therein.  The Documentation and transaction will not be subject to any defenses, counterclaims, claims or setoffs by [TRANQUILLITY] or customer against Fifth Third.

*       *       *

9.      The Collateral made the subject of the Documentation presented to Fifth Third by [TRANQUILLITY] will have been delivered to and accepted by the customer and [TRANQUILLITY] will have performed all of its obligations to the customer and Fifth Third that are required to have been performed by [TRANQUILLITY].

*       *       *

12.     [TRANQUILLITY] will comply with all applicable federal, state and local consumer financial laws, regulations, rules and orders. [TRANQUILLITY] will not engage in any unfair, deceptive or abusive acts or practices as defined by federal, state and local consumer financial law."

See Exhibit A, pp. 1-2, Section II(A).

10.     In addition to the above representations and warranties, and as part of the Dealer Agreement, the parties agreed that TRANQUILLITY would be liable to Fifth Third for a default by a customer "in the case of fraud, willful misconduct, breach of [the Dealer Agreement] or of any warranty or representation made…by [TRANQUILLITY], any misrepresentation by [TRANQUILLITY], its employees or agents, pertaining to or contained in the Documentation, or the existence of any event set forth in Section II(F) of [the Dealer Agreement]."  See Exhibit A, p. 3, Section II(E).

11.     Finally, the parties agreed that TRANQUILLITY would "indemnify Fifth Third and hold Fifth Third harmless from any and all losses, damages, reasonable attorneys' fees, claims, expenses and costs which Fifth Third may incur by reason of any breach or violation of any terms or provision of [the Dealer Agreement] by [TRANQUILLITY]…or resulting from any actions, statements or omissions of [TRANQUILLITY]." *See* <u>Exhibit A</u>, p. 3, Section II(G).

### **Dealer Forged Applications for Financing Eleven Vehicles**

12.     From July 2021 to October 2021, TRANQUILLITY's employees, agents, and/or representatives submitted at least eleven (11) fraudulent loan applications to Fifth Third (the "Loans").

13.     Upon information and belief, for each of the fraudulently obtained Loans, a Dealer representative forged loan documents without the authorization or approval of the customer and submitted such loan documents to Fifth Third for financing.

14.     Upon information and belief, the Dealer representative(s) supplied forged and/or false loan documents to Fifth Third for the express purpose of receiving payment for vehicles that were not actually sold by Dealer as part of a scheme to defraud the bank.

15.     Upon information and belief, the forgery and/or falsification of such loan documents was known, authorized, and/or ratified by SMITH.

16.     Upon information and belief, SMITH has a history and pattern of conducting and engaging in fraudulent business activities.

17.     Pursuant to the terms of the Dealer Agreement, and in reliance on the forged documents and/or false information supplied by TRANQUILLITY to Fifth Third, Fifth Third paid TRANQUILLITY ***over $530,000.00.***

### **Fraudulent Sale of Vehicle 1 (2021 Chevrolet Silverado 2500)**

18.     On or about July 6, 2021, loan documents including the name and other personally identifiable information of Brent Smith ("Smith") were submitted to Fifth Third to finance the alleged purchase of a 2021 Chevrolet Silverado 2500 from TRANQUILLITY ("Vehicle 1").

19.     SMITH is the sole owner and principal of TRANQUILLITY.

20.     SMITH signed and entered the Retail Installment Contract and Security Agreement with Fifth Third in his personal capacity.

21.     According to TRANQUILLITY, an unknown Dealer representative fraudulently used SMITH's name and other personally identifiable information to facilitate the alleged purchase.

22.     To finance the purchase of Vehicle 1, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $76,943.49, assigned Loan No. XXXXX7016 ("Loan 1").

23.     To induce Fifth Third to accept Loan 1, TRANQUILLITY and SMITH, through their employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

    a.  The Credit Application ("Credit Application"), a copy of which is attached hereto as Exhibit B; and

    b.  The Retail Installment Contract and Security Agreement (the "RICSA"), a copy of which is attached hereto as Exhibit C.

24.     The Credit Application and RICSA were prepared by one or more employees or agents of TRANQUILLITY.

25.     According to TRANQUILLITY, the Credit Application and RICSA contained false and misleading information concerning SMITH.

26.    Specifically, according to TRANQUILLITY, the Credit Application and RICSA falsely stated SMITH was applying for Loan 1, would take possession of Vehicle 1, and included a forged signature.

27.    Fifth Third justifiably and reasonably relied upon the Credit Application and RICSA in accepting an assignment of the Loan 1 from TRANQUILLITY.

28.    Fifth Third would not have accepted Loan 1 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application and RICSA represented legal, valid and binding contractual obligations of SMITH.

29.    Fifth Third demanded that TRANQUILLITY repurchase Loan 1 under the terms of the Dealer Agreement.

30.    To date, TRANQUILLITY has failed and refused to repurchase Loan 1 from Fifth Third.

31.    Upon information and belief, Loan 1 was not actually fraudulently obtained by an agent of TRANQUILLITY as claimed, but submitted by SMITH, himself, for the purchase of Vehicle 1.

32.    The outstanding balance owed on Loan 1 exceeds $58,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 2 (2019 Honda Civic)**

33.    On or about October 19, 2021, loan documents including the name and other personally identifiable information of Raymond Mendez ("Mendez") were submitted to Fifth Third to finance the alleged purchase of a 2019 Honda Civic from TRANQUILLITY ("Vehicle 2").

34.     Upon information and belief, an unknown Dealer representative fraudulently used Mendez's name and other personally identifiable information to facilitate the alleged purchase.

35.     To finance the purchase of Vehicle 2, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $20,641.25, assigned Loan No. XXXXX2566 ("Loan 2").

36.     To induce Fifth Third to accept Loan 2, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

> a.  The Credit Application ("Credit Application 2"), a copy of which is attached hereto as <u>Exhibit D</u>; and
>
> b.  The Retail Installment Contract and Security Agreement (the "RICSA 2"), a copy of which is attached hereto as <u>Exhibit E</u>.

37.     The Credit Application 2 and RICSA 2 were prepared by one or more employees or agents of TRANQUILLITY.

38.     The Credit Application 2 and RICSA 2 contained false and misleading information concerning Mendez.

39.     Specifically, the Credit Application 2 and RICSA 2 falsely stated Mendez was applying for Loan 2, would take possession of Vehicle 2, and included a forged signature.

40.     Fifth Third justifiably and reasonably relied upon the Credit Application 2 and RICSA 2 in accepting an assignment of Loan 2 from TRANQUILLITY.

41.     Fifth Third would not have accepted Loan 2 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 2 and RICSA 2 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

42.     Fifth Third demanded that TRANQUILLITY repurchase Loan 2 under the terms of the Dealer Agreement.

43.     To date, TRANQUILLITY has failed and refused to repurchase Loan 2 from Fifth Third.

44.     The outstanding balance owed on Loan 2 exceeds $21,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 3 (2017 GMC Yukon)**

45.     On or about October 19, 2021, loan documents including the name and other personally identifiable information of Diego Vega ("Vega") were submitted to Fifth Third to finance the alleged purchase of a 2017 GMC Yukon from TRANQUILLITY ("Vehicle 3").

46.     Upon information and belief, an unknown Dealer representative fraudulently used Vega's name and other personally identifiable information to facilitate the alleged purchase.

47.     To finance the purchase of Vehicle 3, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $62,084.25, assigned Loan No. XXXXX9922 ("Loan 3").

48.     To induce Fifth Third to accept Loan 3, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

a.  The Credit Application ("Credit Application 3"), a copy of which is attached hereto as Exhibit F; and

b.  The Retail Installment Contract and Security Agreement ("RICSA 3"), a copy of which is attached hereto as Exhibit G.

49.     The Credit Application 3 and RICSA 3 were prepared by one or more employees or agents of TRANQUILLITY.

50.     The Credit Application 3 and RICSA 3 contained false and misleading information concerning Vega.

51.     Specifically, the Credit Application 3 and RICSA 3 falsely stated Vega was applying for Loan 3, would take possession of Vehicle 3, and included a forged signature.

52.     Fifth Third justifiably and reasonably relied upon the Credit Application 3 and RICSA 3 in accepting an assignment of Loan 3 from TRANQUILLITY.

53.     Fifth Third would not have accepted Loan 3 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 3 and RICSA 3 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

54.     Fifth Third demanded that TRANQUILLITY repurchase Loan 3 under the terms of the Dealer Agreement.

55.     To date, TRANQUILLITY has failed and refused to repurchase Loan 3 from Fifth Third.

56.     The outstanding balance owed on Loan 3 exceeds $64,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 4 (2021 Chevrolet Silverado 1500)**

57.     On or about October 19, 2021, loan documents including the name and other personally identifiable information of Jose Gonzalez ("Gonzalez") were submitted to Fifth Third

to finance the alleged purchase of a 2021 Chevrolet Silverado 1500 from TRANQUILLITY ("Vehicle 4").

58.     Upon information and belief, an unknown Dealer representative fraudulently used Gonzalez's name and other personally identifiable information to facilitate the alleged purchase.

59.     To finance the purchase of Vehicle 4, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $50,628.25, assigned Loan No. XXXXX5315 ("Loan 4").

60.     To induce Fifth Third to accept Loan 4, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

      a.     The Credit Application ("Credit Application 4"), a copy of which is attached hereto as Exhibit H; and

      b.     The Retail Installment Contract and Security Agreement ("RICSA 4"), a copy of which is attached hereto as Exhibit I.

61.     The Credit Application 4 and RICSA 4 were prepared by one or more employees or agents of TRANQUILLITY.

62.     The Credit Application 4 and RICSA 4 contained false and misleading information concerning Gonzalez.

63.     Specifically, the Credit Application 4 and RICSA 4 falsely stated Gonzalez was applying for Loan 4, would take possession of Vehicle 4, and included a forged signature.

64.     Fifth Third justifiably and reasonably relied upon the Credit Application 4 and RICSA 4 in accepting an assignment of the Loan 4 from TRANQUILLITY.

65.     Fifth Third would not have accepted Loan 4 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit

Application 4 and RICSA 4, represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

66.    Fifth Third demanded that TRANQUILLITY repurchase Loan 4 under the terms of the Dealer Agreement.

67.    To date, TRANQUILLITY has failed and refused to repurchase Loan 4 from Fifth Third.

68.    The outstanding balance owed on Loan 4 exceeds $51,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 5 (2018 Dodge Charger)**

69.    On or about October 19, 2021, loan documents including the name and other personally identifiable information of Tony Ratsavong ("Ratsavong") were submitted to Fifth Third to finance the alleged purchase of a 2018 Dodge Charger from TRANQUILLITY ("Vehicle 5").

70.    Upon information and belief, an unknown Dealer representative fraudulently used Ratsavong's name and other personally identifiable information to facilitate the alleged purchase.

71.    To finance the purchase of Vehicle 5, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $34,938.25, assigned Loan No. XXXXX9148 ("Loan 5").

72.    To induce Fifth Third to accept Loan 5, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

    c.    The Credit Application ("Credit Application 5"), a copy of which is attached hereto as Exhibit J; and

     d.   The Retail Installment Contract and Security Agreement ("RICSA 5"), a copy of which is attached hereto as Exhibit K.

73.    The Credit Application 5 and RICSA 5 were prepared by one or more employees or agents of TRANQUILLITY.

74.    The Credit Application 5 and RICSA 5 contained false and misleading information concerning Ratsavong.

75.    Specifically, the Credit Application 5 and RICSA 5 falsely stated Ratsavong was applying for Loan 5, would take possession of Vehicle 5, and included a forged signature.

76.    Fifth Third justifiably and reasonably relied upon the Credit Application 5 and RICSA 5 in accepting an assignment of the Loan 5 from TRANQUILLITY.

77.    Fifth Third would not have accepted Loan 5 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 5 and RICSA 5 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

78.    Fifth Third demanded that TRANQUILLITY repurchase Loan 5 under the terms of the Dealer Agreement.

79.    To date, TRANQUILLITY has failed and refused to repurchase Loan 5 from Fifth Third.

80.    The outstanding balance owed on Loan 5 exceeds $36,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 6 (2021 Chevrolet Silverado 1500)**

81.     On or about October 19, 2021, loan documents including the name and other personally identifiable information of Francisco Del Campo ("Del Campo") were submitted to Fifth Third to finance the alleged purchase of a 2021 Chevrolet Silverado 1500 from TRANQUILLITY ("Vehicle 6").

82.     Upon information and belief, an unknown Dealer representative fraudulently used Del Campo's name and other personally identifiable information to facilitate the alleged purchase.

83.     To finance the purchase of Vehicle 6, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $40,432.25, assigned Loan No. XXXXX9674 ("Loan 6").

84.     To induce Fifth Third to accept Loan 6, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

      c.     The Credit Application ("Credit Application 6"), a copy of which is attached hereto as Exhibit L; and

      d.     The Retail Installment Contract and Security Agreement ("RICSA 6"), a copy of which is attached hereto as Exhibit M.

85.     The Credit Application 6 and RICSA 6 were prepared by one or more employees or agents of TRANQUILLITY.

86.     The Credit Application 6 and RICSA 6 contained false and misleading information concerning Del Campo.

87.     Specifically, the Credit Application 6 and RICSA 6 falsely stated Del Campo was applying for Loan 6, would take possession of Vehicle 6, and included a forged signature.

88.     Fifth Third justifiably and reasonably relied upon the Credit Application 6 and RICSA 6 in accepting an assignment of the Loan 6 from TRANQUILLITY.

89.     Fifth Third would not have accepted Loan 6 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 6 and RICSA 6 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

90.     Fifth Third demanded that TRANQUILLITY repurchase Loan 6 under the terms of the Dealer Agreement.

91.     To date, TRANQUILLITY has failed and refused to repurchase Loan 6 from Fifth Third.

92.     The outstanding balance owed on Loan 6 exceeds $40,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 7 (2021 Chevrolet Silverado 1500)**

93.     On or about October 19, 2021, loan documents including the name and other personally identifiable information of Luis Baeza ("Baeza") were submitted to Fifth Third to finance the alleged purchase of a 2021 Chevrolet Silverado 1500 from TRANQUILLITY ("Vehicle 7").

94.     Upon information and belief, an unknown Dealer representative fraudulently used Baeza's name and other personally identifiable information to facilitate the alleged purchase.

95.     To finance the purchase of Vehicle 7, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $51,953.25, assigned Loan No. XXXXX1256 ("Loan 7").

96.     To induce Fifth Third to accept Loan 7, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

e.   The Credit Application ("Credit Application 7"), a copy of which is attached hereto as <u>Exhibit N</u>; and

f.   The Retail Installment Contract and Security Agreement (RICSA 7"), a copy of which is attached hereto as <u>Exhibit O</u>.

97.   The Credit Application 7 and RICSA 7 were prepared by one or more employees or agents of TRANQUILLITY.

98.   The Credit Application 7 and RICSA 7 contained false and misleading information concerning Baeza.

99.   Specifically, the Credit Application 7 and RICSA 7 falsely stated Baeza was applying for Loan 7, would take possession of Vehicle 7, and included a forged signature.

100.   Fifth Third justifiably and reasonably relied upon the Credit Application 7 and RICSA 7 in accepting an assignment of the Loan 7 from TRANQUILLITY.

101.   Fifth Third would not have accepted Loan 7 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 7 and RICSA 7 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

102.   Fifth Third demanded that TRANQUILLITY repurchase Loan 7 under the terms of the Dealer Agreement.

103.   To date, TRANQUILLITY has failed and refused to repurchase Loan 7 from Fifth Third.

104.   The outstanding balance owed on Loan 7 exceeds $53,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**<u>Fraudulent Sale of Vehicle 8 (2021 Chevrolet Silverado 1500)</u>**

105.    On or about October 19, 2021, loan documents including the name and other personally identifiable information of Robert Delgado ("Delgado") were submitted to Fifth Third to finance the alleged purchase of a 2021 Chevrolet Silverado 1500 from TRANQUILLITY ("Vehicle 8").

106.    Upon information and belief, an unknown Dealer representative fraudulently used Delgado's name and other personally identifiable information to facilitate the alleged purchase.

107.    To finance the purchase of Vehicle 8, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $48,841.25, assigned Loan No. XXXXX9463 ("Loan 8").

108.    To induce Fifth Third to accept Loan 8, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

> g.    The Credit Application ("Credit Application 8"), a copy of which is attached hereto as <u>Exhibit P</u>; and

> h.    The Retail Installment Contract and Security Agreement ("RICSA 8"), a copy of which is attached hereto as <u>Exhibit Q</u>.

109.    The Credit Application 8 and RICSA 8 were prepared by one or more employees or agents of TRANQUILLITY.

110.    The Credit Application 8 and RICSA 8 contained false and misleading information concerning Delgado.

111.    Specifically, the Credit Application 8 and RICSA 8 falsely stated Delgado was applying for Loan 8, would take possession of Vehicle 8, and included a forged signature.

112.    Fifth Third justifiably and reasonably relied upon the Credit Application and RICSA in accepting an assignment of the Loan 8 from TRANQUILLITY.

113.    Fifth Third would not have accepted Loan 8 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 8 and RICSA 8 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

114.    Fifth Third demanded that TRANQUILLITY repurchase Loan 8 under the terms of the Dealer Agreement.

115.    To date, TRANQUILLITY has failed and refused to repurchase Loan 8 from Fifth Third.

116.    The outstanding balance owed on Loan 8 exceeds $49,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 9 (2021 Chevrolet Silverado 2500)**

117.    On or about October 19, 2021, loan documents including the name and other personally identifiable information of Conrado Diaz ("Diaz") were submitted to Fifth Third to finance the alleged purchase of a 2021 Chevrolet Silverado 2500 from TRANQUILLITY ("Vehicle 9").

118.    Upon information and belief, an unknown Dealer representative fraudulently used Diaz's name and other personally identifiable information to facilitate the alleged purchase.

119.    To finance the purchase of Vehicle 9, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $51,097.25, assigned Loan No. XXXXX8997 ("Loan 9").

120.    To induce Fifth Third to accept Loan 9, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

      i.    The Credit Application ("Credit Application 9"), a copy of which is attached hereto as Exhibit R; and

      j.    The Retail Installment Contract and Security Agreement ("RICSA 9"), a copy of which is attached hereto as Exhibit S.

121.    The Credit Application 9 and RICSA 9 were prepared by one or more employees or agents of TRANQUILLITY.

122.    The Credit Application 9 and RICSA 9 contained false and misleading information concerning Diaz.

123.    Specifically, the Credit Application 9 and RICSA 9 falsely stated Diaz was applying for Loan 9, would take possession of Vehicle 9, and included a forged signature.

124.    Fifth Third justifiably and reasonably relied upon the Credit Application 9 and RICSA 9 in accepting an assignment of the Loan 9 from TRANQUILLITY.

125.    Fifth Third would not have accepted Loan 9 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 9 and RICSA  9 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

126.    Fifth Third demanded that TRANQUILLITY repurchase Loan 9 under the terms of the Dealer Agreement.

127.    To date, TRANQUILLITY has failed and refused to repurchase Loan 9 from Fifth Third.

128.     The outstanding balance owed on Loan 9 exceeds $41,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 10 (2021 Chevrolet Silverado 1500)**

129.     On or about October 13, 2021, loan documents including the name and other personally identifiable information of Anna De La Torre ("De La Torre") were submitted to Fifth Third to finance the alleged purchase of a 2021 Chevrolet Silverado 1500 from TRANQUILLITY ("Vehicle 10").

130.     Upon information and belief, an unknown Dealer representative fraudulently used De La Torre's name and other personally identifiable information to facilitate the alleged purchase.

131.     To finance the purchase of Vehicle 10, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $50,183.25, assigned Loan No. XXXXX8417 ("Loan 10").

132.     To induce Fifth Third to accept Loan 10, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

      k.  The Credit Application ("Credit Application 10"), a copy of which is attached hereto as Exhibit T; and

      l.  The Retail Installment Contract and Security Agreement ("RICSA 10"), a copy of which is attached hereto as Exhibit U.

133.     The Credit Application 10 and RICSA 10 were prepared by one or more employees or agents of TRANQUILLITY.

134.     The Credit Application 10 and RICSA 10 contained false and misleading information concerning De La Torre.

135.    Specifically, the Credit Application 10 and RICSA 10 falsely stated De La Torre was applying for Loan 10, would take possession of Vehicle 10, and included a forged signature.

136.    Fifth Third justifiably and reasonably relied upon the Credit Application 10 and RICSA 10 in accepting an assignment of the Loan 10 from TRANQUILLITY.

137.    Fifth Third would not have accepted Loan 10 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 10 and RICSA 10 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

138.    Fifth Third demanded that TRANQUILLITY repurchase Loan 10 under the terms of the Dealer Agreement.

139.    To date, TRANQUILLITY has failed and refused to repurchase Loan 10 from Fifth Third.

140.    The outstanding balance owed on Loan 10 exceeds $50,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**Fraudulent Sale of Vehicle 11 (2018 Cadillac Escalade)**

141.    On or about October 8, 2021, loan documents including the name and other personally identifiable information of Martin Arambula ("Arambula") were submitted to Fifth Third to finance the alleged purchase of a 2018 Cadillac Escalade from TRANQUILLITY ("Vehicle 11").

142.    Upon information and belief, an unknown Dealer representative fraudulently used Arambula's name and other personally identifiable information to facilitate the alleged purchase.

143.    To finance the purchase of Vehicle 11, Fifth Third, under the terms of the Dealer Agreement, made a loan totaling $62,229.00, assigned Loan No. XXXXX6693 ("Loan 11").

144.    To induce Fifth Third to accept Loan 11, TRANQUILLITY, through its employees and/or agents, supplied false and misleading information to Fifth Third, including, but not limited to, the following:

m.   The Credit Application ("Credit Application 11"), a copy of which is attached hereto as Exhibit V; and

n.   The Retail Installment Contract and Security Agreement ("RICSA 11"), a copy of which is attached hereto as Exhibit W.

145.    The Credit Application 11 and RICSA 11 were prepared by one or more employees or agents of TRANQUILLITY.

146.    The Credit Application 11 and RICSA 11 contained false and misleading information concerning Arambula.

147.    Specifically, the Credit Application 11 and RICSA 11 falsely stated Arambula was applying for Loan 11, would take possession of Vehicle 11, and included a forged signature.

148.    Fifth Third justifiably and reasonably relied upon the Credit Application 11 and RICSA 11 in accepting an assignment of the Loan 11 from TRANQUILLITY.

149.    Fifth Third would not have accepted Loan 11 but for TRANQUILLITY's representations and warranties in the Dealer Agreement that, among other things, the Credit Application 11 and RICSA 11 represented legal, valid and binding contractual obligations of TRANQUILLITY's customer.

150.    Fifth Third demanded that TRANQUILLITY repurchase Loan 11 under the terms of the Dealer Agreement.

151.    To date, TRANQUILLITY has failed and refused to repurchase Loan 11 from Fifth Third.

152.    The outstanding balance owed on Loan 11 exceeds $62,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

**COUNT ONE**
**(Breach of Contract – Dealer Agreement)**

153.    Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

154.    Fifth Third has complied with all of the terms of the Dealer Agreement.

155.    TRANQUILLITY has breached and is in default of the Dealer Agreement by, among other things, making representations and warranties in connection with the Documentation (as defined in the Dealer Agreement) that were incorrect, and/or submitting the Documentation to Fifth Third with incorrect information.

156.    TRANQUILLITY has breached and is in default of the Dealer Agreement because one or more of its employees or agents, including SMITH, completed the Documentation (as defined in the Dealer Agreement) including, but not limited to Credit Applications 1-11 (collectively, the "Credit Applications") and RICSAs 1 - 11 (collectively, the "RICSAs"), and the Documentation contained false and/or misleading information.

157.    TRANQUILLITY has breached and is in default of the Dealer Agreement by, among other things, submitting the Credit Applications and RICSAs to Fifth Third that contained false information and forged signatures.

158.    The Dealer Agreement contains repurchase obligations that are triggered when the terms of the agreement are breached by the Dealer and there is an event of default.

159.     The Dealer Agreement also contains an attorney fees and costs provision.

160.     Because TRANQUILLITY has breached and is in default under the terms of the Dealer Agreement, it is obligated to repurchase Loans 1 – 11 (collectively, the "Loans"), and to reimburse Fifth Third for any attorney fees and costs incurred.

161.     Fifth Third demanded that TRANQUILLITY repurchase the Loans under the terms of the Dealer Agreement.

162.     To date, TRANQUILLITY has failed and refused to repurchase the Loans from Fifth Third.

163.     The total amount required to repurchase Loans exceeds $529,000.00, together with interest, applicable late charges, and expenses, which have and will continue to accrue.  In addition, Fifth Third has incurred costs and attorneys' fees in enforcing the Dealer Agreement, and Fifth Third's costs and attorneys' fees continue to accrue.

<u>**COUNT TWO**</u>
**(Breach of Contract – RICSA)**

164.     Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

165.     Upon information and belief, SMITH knowingly entered a Retail Installment Contract and Security Agreement ("RICSA") with Fifth Third.

166.     Despite this fact, SMITH is now claiming that a falsified and forged RICSA was submitted on his behalf and without his authorization by an agent and/or representative of TRANQUILLITY.

167.     SMITH is the owner and operator of TRANQUILLITY, and authorized and/or ratified the submission of the Credit Application and Loan Documents to obtain Loan 1.

168.    SMITH has breached and is in default of the RICSA by defaulting and failing to make payment to Fifth Third as required under the terms of the RICSA.

169.    Fifth Third demanded that SMITH make payment under the terms of the RICSA.

170.    The outstanding balance owed on Loan 1 owed by SMITH exceeds $58,000.00, in an amount to be proven at trial, together with interest, applicable late charges, costs, and reasonable attorneys' fees and expenses, which have and will continue to accrue.

## COUNT THREE
### (Fraudulent Misrepresentation)

171.    Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

172.    TRANQUILLITY and SMITH knowingly and intentionally supplied false information to Fifth Third during the course of its business and in at least eleven transactions in which it had a pecuniary interest – i.e., the sale of Vehicles 1–11.

173.    The false information supplied by TRANQUILLITY and SMITH to Fifth Third included, but is not limited to, the Credit Applications and the RICSAs, that supplied false information and forged signatures for the alleged purchasers.

174.    TRANQUILLITY and SMITH knew the representations contained in Credit Applications 1-11 and RICSAs 1-11 were false when they were made to Fifth Third.

175.    The false information supplied by TRANQUILLITY and SMITH to Fifth Third was for the guidance of Fifth Third in connection with its decision to accept the Loans.

176.    As such, TRANQUILLITY and SMITH intended for Fifth Third to rely on the representations and false information.

177.   By supplying false information in the Credit Applications and RICSAs in connection with the sale of Vehicles 1-11, TRANQUILLITY and SMITH failed to exercise reasonable care or competence in obtaining and/or communicating information required by Fifth Third in financing the purchase of Vehicles 1-11.

178.   Fifth Third justifiably relied on the information supplied by TRANQUILLITY and SMITH contained in the Credit Applications and RICSAs when making the Loans.

179.   As a direct result of the actions of TRANQUILLITY and SMITH, Fifth Third has been and continues to be damaged by the intentional misrepresentations of TRANQUILLITY and SMITH in an amount to be proven at trial, but believed to exceed $529,000.00 for the current amount due on Loans 1–11, together with interest, applicable late charges, costs, expenses, and attorneys' fees.

180.   The actions of TRANQUILLITY and SMITH were oppressive, fraudulent, and malicious, and constitute conduct in complete disregard for Fifth Third's rights, entitling Fifth Third to punitive damages.

## COUNT FOUR
### (Unjust Enrichment)

181.   Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

182.   To the extent the Dealer Agreement is found not to be enforceable against TRANQUILLITY and SMITH, Fifth Third is entitled to recover against TRANQUILLITY and SMITH under the doctrine of unjust enrichment an amount exceeding $549,000.00 for the current amount due on Loans 1-11, together with interest, applicable late charges, costs, expenses, and attorneys' fees, because there has been: (a) a benefit conferred upon TRANQUILLITY and

SMITH at Fifth Third's expense; (b) a resulting appreciation of benefit by TRANQUILLITY and SMITH; and (c) an inequitable retention of benefit without payment by TRANQUILLITY and SMITH.

## COUNT FIVE
### (Shareholder Liability)

183.    Fifth Third incorporates all other allegations of the Complaint as if fully rewritten herein.

184.    SMITH exercised dominion and control over the operations of TRANQUILLITY in a manner that was so complete that the corporation had no separate mind, will, or existence.

185.    Upon information and belief, TRANQUILLITY failed to observe corporate formalities of a corporation, and failed to establish a functioning business operation. These failures were caused by the actions and/or conscious inaction of SMITH.

186.    SMITH's control over TRANQUILLITY was exercised in such a manner that such conduct caused injury or unjust loss to Fifth Third, and SMITH exercised control over TRANQUILLITY in such a manner as to commit fraudulent, illegal, or unjust acts.

187.    Upon information and belief, SMITH treated the corporate assets of TRANQUILLITY as his own, thereby failing to respect the separate legal existence of TRANQUILLITY.

188.    Based upon representations made by SMITH and TRANQUILLITY, Fifth Third believes SMITH has title, ownership, custody, and control over the land on which TRANQUILLITY is situated and/or adjacent parcels of land.

189.    Upon information and belief, and as evidenced by the submission of a Credit Application and Loan Documents in SMITH's name to Fifth Third, SMITH authorized and/or

ratified the falsification and/or forgery of applications and loan documents made to Fifth Third with the intent of fraudulently obtaining payment from the Bank.

190. The corporate existence of TRANQUILLITY should be disregarded as a result of the improper and fraudulent conduct of SMITH described above. Accordingly, SMITH is not entitled to the benefit of the corporate form of TRANQUILLITY, and SMITH is therefore jointly and severally liable in contract and equity to Fifth Third for the repurchase of Loans 1-11, plus damages, attorneys' fees, costs, expenses, late fees, and interest.

**WHEREFORE**, Fifth Third respectfully prays for the following relief:

1. A judgment against TRANQUILLITY and SMITH, jointly and severally, in the amount of $549,971.74, together with interest, applicable late charges, costs, expenses, and an award of reasonable attorneys' fees;

2. For an award of punitive damages, as allowed by law; and

3. For all other relief, legal and equitable, to which Fifth Third may be entitled.

Respectfully submitted,

Dated: August 24, 2023

*/s/Katherine A. Rasmussen*
Katherine A. Rasmussen (0093928)
Nathan H. Blaske (0076460)
Samuel J. Otis (0102145)
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (614) 628-6982
Fax: (513) 977-8141
Email: katherine.rasmussen@dinsmore.com
        nathan.blaske@dinsmore.com
        samuel.otis@dinsmore.com

*Attorneys for Plaintiff Fifth Third Bank, National Association*